Good morning, your honors, and thank you. Jeff Romero on behalf of the plaintiffs, Jamien Jensen, the estate of Butch Johnson, the Jensen and Johnson's families, minor child DJ, and unborn deceased child CJ. Your honors, we have several issues before you today. This case has a long history. It arises from a motor vehicle versus a tour bus collision which happened within the borders of the This case has been up before this court previously on jurisdictional issues after having jurisdictional exhaustion proceeding through the Navajo courts, including the Navajo Supreme Court, and ultimately was returned to this district for trial. Trial took place in December of 2019. The issues we're here before this court today about are four issues by which plaintiffs are seeking this new trial and for a decision regarding choice of laws. The four issues before the court today are an evidentiary ruling by the court. I have a question about choice of law. Yes. It raises a number of difficult issues, but I'm not sure that I see that there is a difference between the candidates for the body of governing law with respect to what was the dispositive issue in this case, which was causation. So what is the difference between Navajo law and Arizona law with respect to causation that would make anything of significance turn on the choice of law question? With respect to causation involving the accident, there is not a significant difference at this point, your honor. Although it's raised, there's an open question of a heightened standard by the Navajo Nation regarding causation. So it might be actually adverse that it's a higher burden of causation under Navajo law. The implication of which we're aware is that there's a higher, not a higher burden against plaintiffs, but a higher level of care or caution involving commercial motor vehicles on the nation. But it's not firmly established, your honor. And in our briefing, we've indicated that that might be an issue of law that has to yet be decided by the Navajo Supreme Court. So you need to get past the adverse causation determination first, and it sounds like choice of law isn't material to that issue. If you did get past it, then, of course, there would be choice of law issues as to other categories of damages that might be available, and we'd have to resolve it. Am I getting that correctly? Absolutely, your honor. And that was the the order in which I structured my arguments dealing with first the evidentiary rulings, then the rulings adverse to our summary judgment motion, rule 50 motion. I do agree that we need to get past those issues first in order for this court to consider the choice of law issues. And in that regard, unless the court has other questions regarding choice of law at this moment, I'm happy to address the other issues in the order that I just suggested. Your honor, the first issue is an evidentiary ruling by the court by which the court allowed impermissible hearsay testimony to come into evidence before the jury, and particularly the issues regarding the officer's opinion regarding fault for this accident. Plaintiffs preserved this issue in two limine to prevent that the officer's hearsay statements containing the report from being introduced into evidence, and also the conclusions arrived at by the officer based on the hearsay testimony. Did you object during the closing argument when the defense counsel seemed to use the reports in precisely the way that the motion in limine had sought to preclude them from being used? I did not, your honor, because we had filed the motion in limine which the court granted, but then the issue was addressed at a sidebar with the judge, and the judge permitted the use of those statements. But the judge didn't permit the kind of use at that sidebar that happened in the closing argument, but there was no objection. So do we review that only for plain error? Your honor, I believe the damage was done once the specifically I think the question is, the use on cross-examination was allowed, rightly or wrongly, which is an issue, on the grounds of showing bias by the experts. But on, and there you clearly raise an objection, but on your adversary's closing argument, they used the same information, and now they used it clearly for its truth. I'm interested to hear what your adversary says about that, but it seemed to be a blatant disregard of the judge's earlier limitation. But you made no objection. So don't, if we find that that's the error, we have to review that aspect on a plain error standard, yes? Yes, your that the damage was done by the point of closing argument, that when the court allowed the invisible testimony or police report information to come in, it was in. The manner in which it was introduced immediately, over our objection, was exactly the way it was used at the end. Did you ask for a limiting instruction to the jury at the time it was used on cross-examination? We did not, your honor. We objected to any use of the information at all. So why, you know, you lost that, but why didn't you ask for a limiting instruction? Juries understand English language, and they, if they were told, you can't consider this for its truth, but you can consider it for bias, that would have been very enlightening, but you chose not to do that. Your honor, we did not, based on the ruling as we understood it from the court's ruling, is that we opened the door for this information to come in. That ruling didn't have a basis in the evidentiary rules, but we understood that the court was allowing this to come in without the particular limitation only for the purposes of showing bias, because the court reasoned that we opened the door for all of it to come in. And so we didn't understand that the ruling limiting the use as opposed to opening the door for this evidence to come in, although improper and hearsay evidence. Well, why isn't it appropriate to cross-examine an expert about reports that he has reviewed that reach a different conclusion and ask him why he reached the conclusion that is different? Why isn't that a proper line of cross-examination when they lay the foundation that the expert did review and consider it? This court has previously ruled that inadmissible evidence is not admissible if it's not relied upon, and certainly the expert witnesses that we presented did not rely on the hearsay statements of the police report. In fact, to the expert accident reconstructionist and the physical evidence, which is what purposes and the information we were seeking to introduce from the police report. There are a few Ninth Circuit cases regarding that from the Ninth Circuit. First, police reports are inadmissible hearsay. That's Colvin versus U.S. And then inadmissible evidence not used in forming the opinion may never be used. That's Hanford Nuclear, also a Ninth Circuit case. And the reason that we're asking for the court to overturn the jury verdict based on that introduction of the improper inadmissible evidence is that there's a presumption of prejudice that then shifts the burden to the benefiting party to establish that the error was harmless. And that's Barabin versus Ashton Johnson, also a Ninth Circuit case. And here it's clear that the error was not harmless, as Judge Wacoff has indicated, once the information was in. I understood the foundation they tried to lay with Turner was the question was he was asked if, quote, that was one of the materials or documents he relied upon in preparing his opinions as an expert witness. And his response was, quote, it all contributed. I read it all and evaluated it, close quote. Why isn't that enough to bring it within the scope of materials he relied upon? And then it's something he can be crossed on as to why he rejected it. His testimony was different than he relied upon that report and the conclusions of the officer. Certainly he looked at the report. Certainly he looked at the measurements. But he wasn't the accident reconstructionist. He is merely stating that he reviewed all the materials that were available, but he never stated he relied upon it. And other case law in our brief sites, the idea of suggesting there's reliance is an impermissible means for trying to admit otherwise inadmissible evidence. The case that we cited is United States versus Inc. Evidence offered for impeachment should not be an attempt to circumvent the hearsay rule and to affect the jury. That's exactly what was done here. The very motion in limine that was to limit what information could be used from the police report addressed exactly this issue, the conclusions of the police officer and the hearsay components of the police report. And to then get it in by just asking an expert, did you review it? That's an impermissible. I'm not sure I'm following what you're saying. Supposing an expert is on the stand and he says, I've concluded X. And on cross-examination, you put the question, isn't it true that to your knowledge, 20 people under oath said exactly the opposite of what your conclusion is. And you're saying that would not be a permissible question? That's a different inquiry given the factual layup. It's 20 people under oath as opposed to comments and conclusions of the police officer, which are hearsay. No, no. It's hearsay so far as those 20 people are concerned. They're not being cross-examined. This is just a question. But in classic cross-examination of experts, hearsay is permitted, but it typically is subject to limiting instructions, which weren't requested here. I don't see how you could cross-examine an expert about stuff that he chose to disregard without, in your view, violating the hearsay rule. And that can't be the law. And, Your Honor, one of the cases cited is United States v. Sanchez that it's improper under the guise of artful cross-examination to tell the jury the factual layup that you've offered is sworn testimony of witnesses. Witnesses are not providing hearsay by the nature of the fact that they're witnesses. No, no. I'm not talking about witnesses at trial. But the point you're making, which, of course, is true, that a judge in his or her discretion could say, no, the introduction of that particular hearsay, even if permissible for the purpose of establishing bias, is so prejudicial on its face that under Rule 403, I'll keep it out. Here, the judge, though, didn't make that determination. And we have, of course, deferential review of his evidentiary rulings. Yes. But the law of the Ninth Circuit is that if the expert did not rely on the opinions, then the inadmissible evidence doesn't come in. Let me ask you one other question. Why do you think it makes a difference in this case? It had the effect exactly of doing what the defendants hoped it would do. It infected the jury instructions, and that was causation. And because the jury had been given the officer's opinion regarding causation, including a broad sweep of discussion that the officer, although not true, interviewed everybody at the scene, took photographs, made measurements, and based on all of the testimony concluded that, one, our client's vehicle crossed the roadway, but also added other speeding before the accident. All of the information that was then stamped with the official imprimatur of a police officer's conclusions infected the jury to understand we already have a formal determination regarding causation. And that was from the officer, and that's what the jury did. That's why we think that it infected the end result of this trial. All right. Counselor, your time has expired. I'll give you two minutes for rebuttal, but we'll hear now from Ms. Gilbride. Thank you, Your Honor. Good morning, Your Honors, and thank you, Eileen Gilbride, for the defendant's appellees. Can you hear me all right? Yes, just fine. I believe our answering brief sufficiently discusses the issues, and I don't have a whole lot to add to it, but I would like to touch on the impeachment issue. In response to his argument, that the case law, what it permits is to be crossed on materials upon which you rely, but not merely anything that you happen to review. I don't think the case law does say that, Your Honor, because, as you noted earlier, or as Judge Rakoff noted earlier, if that were the case, you would never be able to impeach an expert on the fact that documents or information that he reviewed undermines his opinion, or, as occurred in this case, that the expert just threw away or chose not to rely on the information that was bad for him. He just... But how do you explain? That's fine, perhaps, as far as it goes, but your colleague on summation asserted those various, at length, asserted those various hearsay items for their truth. He did not quote any third party statement, and that's what the trial judge kept out, and that's what we... Wait a minute, wait a minute, wait a minute. This is, I think, at page 119, 120 of the record. He goes on at great length, the DPS officer who investigated the accident, who was at the scene of the accident, who took photographs, who took statements, who took measurements, stated that the Johnson vehicle, blah, blah, blah, and the DPS report prepared by the officer who investigated the accident, who took measurements, who took photographs, who talked to witnesses and prepared a report, said with respect to vehicle number two, the bus, there was no improper action, and he also noted, etc. And he repeats that about 14 times. He actually repeated it six times, and in contrast... Oh, pardon, pardon me. In contrast to that, your honor, there are 12 pages of argument. Isn't this exactly the argument that the motion eliminated was directed at? This is, and having gotten it in at the sidebar for purposes of cross, you then used it for the improper purpose at the DPS, cloaked them with the authority of the state of Arizona, and said that got the substance of all their conclusions as if they were an expert. But in context, your honor, as I was saying, there are 12 pages of argument about how the expert Alexander threw away or decided he didn't want to look at or consider the evidence, including the DPS report, that were contrary to his opinions. Not only that, but what the judge precluded in the motion in limine were third-party statements. If you look at the judge's ruling, he precluded and we agreed we weren't going to use third-party statements included in the DPS report, and we did not use any third-party statements in the DPS report. What we did was our entire closing argument was showing how their expert Alexander, his opinion was not credible. I don't really understand that. Here's the very beginning of your colleague's closing argument. So what happened here? Everyone who was at the scene, so forth, so forth, the department of public safety highway patrol officer who was at the scene of the accident, who investigated the accident on the same day of the accident, designated the Johnson vehicle vehicle number one. What does that mean? Well, Mr. Alexander told you that DPS officers will determine who they think is at fault, and they will designate the vehicle vehicle number one. So the DPS officer who was at the scene of the accident, investigated the accident, talked to witnesses, took photographs, took measurements, made the decision that Mr. Johnson's vehicle was at fault, was the at-fault vehicle number one. You don't say that that is a blatant assertion of the truth of what was determined by the DPS? Well, I think in context there were, after that page, there were 12 pages of argument about how Alexander's opinion were contrary. So the jury wasn't affected by the very first thing that your colleague said on summation? He started off with something irrelevant in your view and only got to what you think was relevant several pages later? Well, I think... How could that be? I don't think, well, first of all, it's the plaintiff's burden to show that the error was over the line. I understand the harmless error argument, and that's a significant argument, but I cannot understand, unless I misunderstand you, that you were not conceding that what your colleague did in the beginning of his opening was blatantly improper? Well, Your Honor, my answer to that is, first of all, there was no objection during the closing argument, and second, are we going to tell the trial court that it abused its discretion in not giving a limiting instruction when none was requested, in not telling counsel that he shouldn't do that when no objection was made? This is an abuse of discretion standard, and we can't tell the court, the trial judge, that he made errors that no one brought his attention. And I think another point... I think my question was a yes or no question, but I won't put you on the spot any further. Another reason why I think there was not harmful error here is, there was one hearsay statement, third-party statement, in the DPS report, and it was from a witness, Ms. West, who actually testified at trial. So, to the extent that, and counsel did not quote from that, that the cases that opposing counsel has put in his reply brief about improper use of impeachment as substantive evidence, in those cases, counsel actually quoted from third-party hearsay statements from paid expert witnesses who were not, who did not testify, who were not credible. This is from a, the DPS report is from a credible, uninterested, third-party officer who had no reason to... Did he say that it's reliable and falls within a hearsay exception? It's hearsay, isn't it? Did this officer take the stand? He did not take the stand. And it's hearsay. But experts are allowed to rely on hearsay and be impeached with what they said, what they saw, and what they read, and what they reviewed, and what they ignored in rendering their opinion. That's proper impeachment. And plaintiff has the obligation to show that it was an abuse of discretion to allow that cross-examination. I don't see how allowing that cross-examination was so clearly error and harmful error at that. But again, to come back, what I'm trying to focus you on is not that use, but the later use for its truth of blatant hearsay that was, your adversary claims, materially harmful. And I would argue that it was waived, in terms of the closing argument, was waived by no objection. Oh, what you mean? So let me get this straight. So your view of the law is that a professional who is licensed as a lawyer can get up on summation and point the jury to all sorts of objections? That's professional? That's okay? That's something we should approve? Your Honor, I have to disagree with you on the characterization of the closing argument. Counsel was really focusing on how the DPS report was inconsistent with Alexander's opinion, because basically the entire closing argument was focused on how Alexander and his entire accident reconstruction opinion ignored all of the testimony. He even ignored the testimony of Wisner, the fellow who drove the SUV behind the bus, who said the bus contacted him. And he even ignored that and said, no, the bus didn't contact him, when Wisner himself testified that he did. This Alexander ignored every piece of objective evidence, and that's what he was going for. It was not unprofessional. It was not unethical. No, no, that's the cross-examination. But I'm talking about the summation. And that's... And clearly he did... I don't see anywhere in those opening statements... Now, we only introduce this for the show that the expert was biased or unfair. That's not what he says in his opening statement. I just read it. I'm not going to read it again. And we do review it. If there's no objection, we review it, of course, for plain error. But we still review it, yes? I mean, I would argue that it's been waived. But if you're going to review it, then I would argue that it's not harmful error, because the jury heard from every single witness that Johnson crossed... No witness testified who was there, who saw the accident, was there, testified that the bus crossed over into Johnson's lane. That may be a substantial argument. I don't understand your waiver argument if you're saying that every time someone fails to object, but the other side commits plain error, we still cannot review it because it was waived. That would be the end of the plain error review doctrine, which cannot be the law. I mean, Your Honor, perhaps I misspoke. You can review for plain error, certainly. I just don't think there was harmful, reversible error here. I would go on to the Navajo law issue, if you want me to. Or I'll ask the court's indulgence on that to sort of direct me if you'd like to know there, if you'd like to talk about that. That is a major issue, as far as I'm concerned. This is a diversity case, Your Honor. State law applied based on Erie Railroad versus Tompkins. The only other consideration, because they're arguing Navajo law should have applied, the only other consideration is whether applying state law would have interfered with federal interests or infringed on the tribe's right of self-government. And this court already held in the last case that nothing about this crash on a U.S. highway involved, interfered with federal interests or infringed on the tribe's right of self-government. What about their alternative argument on Arizona choice of law principles? So under Claxon, you have to apply the choice of law rules of the jurisdiction within which you sit. And so then the question is, would Arizona apply its choice of law rules in deciding between Arizona law and Navajo law? What's your response on that point? Your Honor, I don't think choice of law really applies here, because this accident occurred on a U.S. highway. It did not occur on tribal property, as Plaintiff's counsel has said. This council, it occurred in Arizona on a U.S. highway. I understand that argument, and that may be a definitive response to the argument that under federal Indian law principles that you would apply Navajo law. I understand because the jurisdiction to prescribe usually matches jurisdiction to adjudicate. There is no jurisdiction to adjudicate, and therefore federal Indian law would not apply Navajo law. But they make a further argument that within Arizona choice of law principles, Arizona has chosen on its own, which it could do if it wanted to, to sometimes allow the application of Navajo law on its own, totally apart from federal principles. What's your response to that argument? And don't give me an answer on federal law, because that's not the question. I'll try, Your Honor. The question, that's incorrect, because the only case, the only cases Plaintiff have come up with that applied Navajo law, or even considered under choice of law principles to apply Navajo law, were cases that raised a tribal claim. There is no tribal claim here. Both the complaint and the amended complaint raised only negligence. What's your best Arizona case for your position? I don't have a case. Sorry, Your Honor, I don't have a case, because I'm relying on their cases, which they say, where they say choice of law applies. I don't have any case where Arizona has applied choice of law to apply Navajo law. I don't think there is one. I understand that, but is there a case in which they applied Arizona law that they discussed the choice of law? Not, not in a context of should Arizona apply Arizona or tribal law. There is not a case that I'm aware of. Is there a case in which they have applied Arizona law similar to this accident case? Involving an accident within the tribal, within the reservation? No. No, not within the reservation, within a U.S. highway going across the reservation or wherever it was. Yeah, I'm not aware of one. I'm not aware of one. I'm not aware of any cases where they used choice of law to apply and consider applying Navajo law unless there was a tribal claim. And then, what's your, what's your argument then of why Arizona law applies? If it's on tribal property with a U.S. highway, as I understand the case, what's your best case from Arizona as to what law Arizona would choose to use had they, this case, been filed in the Arizona court? Erie Railroad versus Pumpkin, which says you apply state law. And I'm just not aware of any Arizona case that has faced the issue of whether Arizona would, under a choice of law analysis, or even use a choice of law analysis in those circumstances. It seems to me that this case has a lot of byproduct that may go with it. Arizona does accept questions from us on their law. What would be your position of whether we should find out on this issue by certifying a question to the Supreme Court of Arizona? I'm not sure what the certified question would be. Would Arizona apply a choice of law analysis to this type of case? I'm not aware of any other case in the country that did that. I don't think it's necessary to certify that to the Supreme Court. So I thought part of your argument in your briefs was that it wouldn't matter in any event that the two laws were materially identical so far as causation is concerned. But your adversary said, well, that's not quite correct in his view that there's a whatever. What do you say to that? That has never been briefed. I have no idea because no one has ever raised that issue. No one has ever briefed that issue. The only thing the parties and the courts have done in this case is say, is it tribal jurisdiction or is it not tribal jurisdiction? It's not tribal jurisdiction. It's federal or state court. And we apply Erie Railroad versus Tompkins state law because we have no Navajo claim. We have no tribal claim. So I'm not sure we would apply Navajo law to an accident on a U.S. highway. I'm not an expert on Navajo law. I've been there, but I was never there as a lawyer. Your adversary, who perhaps knows more about this subject matter jurisdiction than I do, said that there is a difference when there are motorized vehicles traveling as containing passengers as to proximate cause, et cetera. I have no idea what Navajo law is on this issue. Do you? I do not. Again, because it was never raised. It was never briefed. I understand it's never been raised, never been briefed. That wasn't my issue, my question. The answer is no, I don't know. All right. And you don't have a position as to whether we should find out by certifying a question to the Arizona Supreme Court? I don't think that's necessary, Your Honor. This accident occurred in 2004. The evidence was overwhelming. I don't think there was any reversible error here. I don't think we're going to certify a question that won't make any difference to the outcome of a retrial. Oh, wait a minute. Do you have some cases that would not make any difference? I do not. I do not. Your Honor, I was... All right, so we allowed you to go over to everybody. We asked you quite a few questions. If you want to take a few seconds to wrap up, and then we'll hear from Mr. Romero on rebuttal. I think I basically said everything that I had to say. Thank you. We ask you to affirm. Okay. All right. We'll hear now rebuttal from Mr. Romero. Thank you, Your Honor. Briefly, Your Honor, on the issue of the impermissible evidence, Hanford Nuclear, which is a Ninth Circuit case, says that the inadmissible evidence not relied on may never be used. And there was a discussion of burden of whose burden it was to show prejudice. There's another Ninth Circuit case on point. The estate of Barbin v. Austin Johnson, indicating the court presumes prejudice where there's an error and requires the benefiting party to establish the harmless error. And that's Barbin at 465. I'll move forward quickly, Your Honor. I appreciate the additional time. With respect to our summary judgment issues and our Rule 50 issues, I believe it's fairly clear that the court made a finding that was improper based upon its earlier finding of summary judgment granted for negligence per se. It added to the standard that the plaintiff's vehicle was a superseding intervening cause or that a jury could find that. That's contrary to Arizona law regarding superseding intervening cause. The causes were consistent and continuous. In fact, the driver testified that had he not violated that statute and moved into the left lane, he would not have been in a position to be in the accident with our client. And that was the very purpose for which the statute was enacted, to prevent head-on collisions. I'll touch that only that briefly, Your Honors, because I'd like to move to the Indian law question. There is some law on point, and that's Tracy v. Superior Court. That's an Arizona Supreme Court case. Tracy says it applied principles of comity, but is there a case from the Arizona courts that has ever applied Arizona's restatement choice of law multi-factor test to a choice between Arizona law and Navajo law or the law of another Indian tribe? Not of which we are aware. We understand that it's a question of first impression, and for that reason, we would like for the matter to be useful for all parties involved. Your adversary says that you never raised this. You raised the issue of Navajo law versus Arizona law, but you never asserted or cited any cases to show that it would have made a difference because of the assertion that you made orally in your opening statement here that Navajo law imposes a heightened burden in circumstances like this on the vehicle with handling passengers. Is that correct, that you never raised it before? Your Honor, we raised it below in the motion to dismiss when the claims were dismissed, but we acknowledge in our briefing that it's an open question that should be addressed by the Navajo Supreme Court whether or not there is a heightened duty for commercial carriers on the reservation. But that goes to the issue of duty. I thought I understood you to say in response to one of my questions that there is not a materially significant difference between Arizona and Navajo law on the issue of causation and that the issue of choice of law only arises if we get past the causation issue first. Is that correct? And that's true on causation, Your Honor. Okay. And then with respect to the choice of law, the Arizona court referred to the restatement second for conflicts of laws, and it does do a relationship test. That's significant here because the defendants have zero relationship to the state of Arizona. All parties have relationship to the Navajo Nation. Our clients obviously are members of the Navajo Nation and sustain injury within the boundaries of the Navajo Nation. They're governed by laws that recognize familial relationships and, more importantly here, recognize the unborn child who was miscarried as a result of Navajo court and the Navajo tribe does in guiding its members through beneficiary rights, wrongful death estate rights, and who actually is deemed a person and at what stage. The defendants went to the Navajo Nation specifically to tour the nation, to see the Navajos in their native environment. They were charging money to benefit from being on the Navajo Nation, charging tourists to come and see. So they have a relationship to the Navajo Nation as well. None of the parties have a direct relationship to the state of Arizona. And in terms of the relationship understanding under the restatement, we would submit that the Arizona Supreme Court would easily find or should easily find that the choice of law should be the Navajo Nation choice of law with respect to the parties and the claims. All right. Thank you, counsel. I have a lot to go over. We thank both counsel for the helpful arguments in this case and the case just argued will be submitted. Thank you very much. And that concludes our session for this morning.
judges: Wallace, Rakoff, Collins